KELLY, J.
(dissenting). I agree fully with Justice CAVANAGH’s dissent. I write separately to state my additional reasons for supporting an affirmance of summary disposition for defendant.
PLAINTIFF FAILED TO ESTABLISH A PRIMA FACIE CASE
Under any employment discrimination test, plaintiff failed to establish a prima facie case. Defendant had discretion to choose one of the candidates on the promotion list and had an established practice of not necessarily promoting people in the order they appeared on the list.
Defendant was not required to consider those attributes that plaintiff alleges made him a superior candidate to the employee who was in fact promoted. Plaintiff did not rebut defendant’s asserted reliance on the promoted employee’s maturity and sense of service. Defendant was not required to forgo subjective criteria in making the employment decision, especially considering the critical role that police officers fill in society. Plaintiff failed to rebut defendant’s race-neutral rea *244 sons for its employment decision. Plaintiffs failure to sustain his burden entitled defendant to summary disposition.
I disagree with the majority’s rejection of the background circumstances test of Mien. Allen v Comprehensive Health Services, 222 Mich App 426; 564 NW2d 914 (1997). In addition, I note that, even absent Allen, plaintiffs claim must fall because plaintiff failed to refute defendant’s legitimate nondiscriminatory basis for promoting another candidate.
THE BACKGROUND CIRCUMSTANCES TEST SHOULD NOT BE DISCARDED
The fact that Michigan’s Civil Rights Act[1] creates no distinction based on a person’s status as a member of the “majority” or the “minority” does not justify discarding the background circumstances test. Because it is entirely consistent with the purpose of the act, it should be retained.
The majority’s analysis suggests that this case involves a simple issue of the proper interpretation of § 202 of the civil rights act.[2] However, the language of the act does not address the question presented here: what evidence must be presented to establish a prima facie case of discrimination.
*245 This Court grappled with the question in earlier decisions. See, e.g., Lytle v Malady (On Rehearing), 458 Mich 153, 172-178; 579 NW2d 906 (1998) (opinion by WEAVER, J.); Matras v Amoco Oil Co, 424 Mich 675, 683-684; 385 NW2d 586 (1986). It determined that, where there is no direct evidence of impermissible bias, a prima facie case of employment discrimination can be established through the burden-shifting framework in McDonnell Douglas Corp v Green, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).
The background circumstances test is a modification of the McDonnell Douglas test. The rationale for the test was first articulated by the District of Columbia Circuit Court of Appeals in Parker v Baltimore & Ohio R Co, 209 US App DC 215; 652 F2d 1012 (1981). The Allen Court adopted it as its own, concluding that it was an appropriate modification of the McDonnell Douglas test.
The background circumstances test acknowledges that reverse discrimination cases involve different factual situations and different underlying prejudices than do traditional discrimination cases. The test recognizes at its base that the hostile discrimination present in McDonnell Douglas is not typically directed at members of the majority. Allen, supra at 431-432.1 agree with the following reasoning from Allen that quotes Parker, supra:
“The original McDonnell Douglas standard required the plaintiff to show ‘that he belongs to a racial minority.’ Membership in a socially disfavored group was the assumption on which the entire McDonnell Douglas analysis was predicated, for only in that context can it be stated as a general rule that the Tight of common experience’ would lead a factfinder to infer discriminatory motive from the unexplained hiring of an outsider rather than a group member. Whites are also a protected group under Title VII, *246 but it defies common sense to suggest that the promotion of a black employee justifies an inference of prejudice against white co-workers in our present society.” [Allen, supra at 431-432, quoting Parker, supra at 220.]
The majority’s rationale in overruling the background circumstances test is not in keeping with the progeny of McDonnell Douglas. In mechanically applying the plain language doctrine of statutory interpretation, the majority subverts the purpose of the act and the Legislature’s intent in writing it. They were to prevent discrimination against a person because of that person’s membership in a certain class and “to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases.” Radtke v Everett, 442 Mich 368, 379; 501 NW2d 155 (1993), quoting Miller v C A Muer Corp, 420 Mich 355, 363; 362 NW2d 650 (1984).
In our society, demeaning acts of prejudice directed against whites because of their race are uncommon. Historically, whites have not suffered from pervasive racial oppression, discrimination, and stigmatization as have members of minority races. A national survey conducted in 1990 found that prejudice against whites continues to be relatively rare. Only seven percent of whites interviewed claimed to have experienced any form of racial discrimination. Schuck, Affirmative action: Past, present, and future, 20 Yale L & Pol’y R 1, 67 (2002). Conversely, with respect to racial minorities, “race unfortunately still matters.” Grutter v Bollinger, 539 US 306,333; 123 S Ct 2325; 156 L Ed 2d 304 (2003).
The existence of this crucial distinction between the treatment of the majority and of the minority supported the Allen Court’s adoption of the background circumstances test. Common experience in Michigan does not *247 lead to the conclusion that, when an adverse employment decision is made regarding a white employee, it is based on race.
As a consequence, I would uphold the background circumstances test adopted in Allen and affirm the decision of the lower courts.

 MCL 37.2101 et seq.

 That section, MCL 37.2202, provides in relevant part:
(1) An employer shall not do any of the following:
(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.